UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELLIOTT APPRAISERS, LLC, *et al.*, | § | |
| | § | |
|   *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-10-2231 |
| | § | |
| JM INSURANCE SERVICES, LLC, | § | |
| | § | |
|   *Defendant*. | § | |

## ORDER AND FINAL JUDGMENT

Pending before the court is plaintiffs' motion for summary judgment. Dkt. 26. Upon review of the motion, the response, and the applicable law, the motion is GRANTED.

## BACKGROUND

Elliott Appraisers, LLC ("Elliott")[1], sold a diamond ring to Joan Johnson for $264,000 in November, 2008, and later appraised the ring as having a value of $280,000. Dkt. 34-6 at ¶¶ 6-9. Ms. Johnson filed suit against Elliot in the 165th Judicial District Court of Harris County, Texas, on February 17, 2010, and alleged fraud, a violation of the Texas Deceptive Trade Practices Act, and negligent misrepresentation. Dkt. 34-6. Elliot's insurer, JM Insurance Services, LLC ("JM"), denied coverage, and Elliot filed this declaratory judgment action seeking a ruling that JM owes a duty to defend in the underlying lawsuit.

JM filed a motion to dismiss and asserted that, despite a claim of negligence in the underlying suit that would otherwise be covered under the policy, the factual allegations made are only consistent with a non-covered fraud claim. Dkt. 6. That motion was denied on the basis that an inaccurate jewelry appraisal, as is alleged in the underlying suit, may be the result of either

---

[1]   Plaintiffs will be referred to collectively.

intentional or negligent behavior, and that Elliot had made out a facially plausible claim that it is entitled to a defense. Dkt. 22.

Elliot now moves for summary judgment, and asserts that it is entitled to a defense in the underlying suit. Dkt. 26. JM has responded to the motion, and Elliot filed a reply. Dkts. 31, 32.

ANALYSIS

**I. SUMMARY JUDGMENT**

A timely motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences,

unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## II. Contract Interpretation - Eight Corners Rule

"Texas courts interpret insurance policies according to the rules of contract construction." *de Laurentis v. U.S. Auto. Ass'n*, 162 S.W.3d 714, 721 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). The primary objective of the court is to ascertain the parties' intent, as expressed in the written instrument. See *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). "[T]he parties' intent is governed by what they said, not by what they intended to say but did not." *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)) (internal quotation omitted).

An insurance policy that can be given a definite or certain legal meaning is not ambiguous, and must be construed by the court as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). An ambiguity exists where a policy is susceptible to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Courts interpreting contractual provisions give terms their plain, ordinary, and generally accepted meanings, unless otherwise defined by the parties. "'Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to create an ambiguity.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Liquids, Inc.*, 271 F.Supp.2d 926, 932 (S.D. Tex. 2003) (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994)). "[I]f, and only if, the court finds an ambiguity in the contract provisions, particularly in exclusionary clauses, the court should construe the policy strictly against the insurer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,

3

271 F.Supp.2d at 932; see also *Waffle House, Inc. v. Travelers Indem. Co. of Ill.*, 114 S.W.3d 601, 607 (Tex.App.-Ft. Worth 2003, pet. denied) (cautioning that exclusionary provisions "must be clearly expressed and must not be ambiguously worded"). And, "if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F.Supp.2d at 931.

"Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). "Resort to evidence outside the four corners of these two documents is generally prohibited." *Nautilus Ins. Co.*, 566 F.3d at 454. "The duty to defend does not depend upon the truth or falsity of the allegations: 'A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend . . . .'" *Id.* (internal citations omitted).

"The insured bears the initial burden of showing that the claim . . . is potentially within the insurance policy's scope of coverage." *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). When the petition does not present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured. *Pine Oak Builders, Inc.*, 279 S.W.3d at 654. But, if the facts in the pleadings give rise to any claim covered under the policy, then the insurer has a duty to defend the insured with respect to all of the claims. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004). Although the allegations in the petition are interpreted liberally and in favor of the insured, the court must not "read facts into the pleadings," "look outside the pleadings," or "imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997). The court's inquiry must turn on the facts alleged and the origin of damages, rather than the legal theories asserted. See *Nat'l Union Fire Ins. Co. of*

*Pittsburgh, PA*, 271 F.Supp.2d at 931; see also *Am. Auto., Inc. v. Mayfield*, 287 F.Supp.2d 661, 664 (N.D. Tex. 2003). Nonetheless, "all doubts regarding the duty to defend [are resolved] in favor of the duty." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

## III. Application

### a. Covered claim.

The original petition[2] filed against Elliot Appraisers in the state court alleges the following relevant facts:

> 6. In November 2008, Joan Johnson entered into an agreement with Defendants to purchase a pear-shaped diamond for $264,000. The diamond purchase was completed and fully paid for on or about November 26, 2008. The diamond was incorporated into a ring for Ms. Johnson. Ms. Johnson paid Defendants an additional $12,300 on or about December 29, 2008.
>
> 7. On or about December 23, 2008, Quenton Elliot gave Joan Johnson a written appraisal representing that he had inspected and analyzed the diamond, characterizing the diamond as H in color and SI2 in clarity. In fact, the diamond is accurately characterized as having no better than L in color and I1 in clarity.
>
> \* \* \*
>
> 9. . . . The appraisal . . . contained specific representations, including the representation that [Elliot] inspected and analyzed the diamond in his laboratory from December 4 to December 23, 2008, and that the diamond ring has a replacement value of $280,000.
>
> 11. . . . According to Quenton Elliot, he was given a certificate from the European Gemological Laboratory ("EGL") that showed the diamond was H in color and SI2 in clarity. If so, Defendants knew or should have known that EGL certificates could overstate color and clarity grades by two grades or more. If Defendants had the skill and care they professed to have, they would have known that ECL certificates were to viewed with skepticism.

---

[2] A first amended petition was filed against Elliot in the state court shortly before this case was filed in June, 2010. JM argues that Elliot failed to provide it adequate notice of the first amended petition. The court finds that JM's duty to defend may be determined by reference to the original petition filed in the state court. JM does not contest that it received timely notice of the original petition and thereafter denied coverage. Therefore, the court need not address JM's argument that Elliot failed to provide timely notice of the first amended petition.

5

Dkt. 34-6 at 3-4. Plaintiff Johnson then pleads a cause of action for "Negligence and Negligent Misrepresentation" alleging that "Defendants did not exercise reasonable care or competence in obtaining and communicating the information they conveyed to Plaintiff." *Id.* at 9.

The insurance policy issued to Elliot by JM, in a section entitled "Jewelry Appraisal Liability - Coverage J," provides that JM will pay "all sums which an 'insured' shall become legally obligated to pay as 'damages' because of an act, error or omission of an insured in performing written appraisals on jewelry, precious or semi-precious stones . . . ." Dkt. 1-3 at 31. The original petition filed in the state court contains factual allegations that Elliot made inaccurate representations concerning the color and clarity of the diamond in a written appraisal. Elliot is alleged to have failed to act with "reasonable care" in making representations to Ms. Johnson. Viewing the factual allegations of the original petition liberally in favor of Elliot as the insured, a claim that is "potentially within the insurance policy's scope of coverage" has been alleged. *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d at 471. Specifically, Elliot is alleged to have failed to exercise reasonable care in preparing an appraisal of the diamond ring, and to have made a misrepresentation of the color and clarity of the diamond. This qualifies as an "act, error or omission" in the preparation of an appraisal for purposes of Coverage J.

JM, however, argues that Ms. Johnson's claim for a negligent appraisal falls within a policy exclusion for "misrepresentations" made to induce a sale. In his respect, Coverage J excludes "any dishonest, fraudulent, criminal, malicious or knowingly wrongful act, error or omission, or any misrepresentation *to induce a sale* committed by or at the direction of the 'insured.'" Dkt. 1-3 at 32 (emphasis added). A plain reading of the exclusion reveals that the qualifiers "dishonest, fraudulent, criminal, malicious or knowingly wrongful" apply equally to each of the following terms: "act," "error," "omission," and "misrepresentation." In other words, the exclusion applies only to an *intentional* misrepresentation that induces a sale, and not a *negligent* misrepresentation as is alleged

6

in the underlying lawsuit.  At the very least, this exclusion is ambiguous in this respect, and must be construed "strictly against the insurer." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F.Supp.2d at 932.  Thus, resolving all doubts in favor of the duty to defend, the exclusion does not defeat all possible claims in this case.  *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

JM also argues that the policy does not permit coverage "for appraisals written after the damage occurred" and that, since the sale is alleged to have occurred in November, 2008, and the appraisal was issued in December, 2008, there can be no covered claim. Dkt. 31 at 6.  Elliot contests JM's interpretation of the policy, and asserts that no policy provision limits liability in the fashion JM suggests.  The court need not reach this issue, however, because even if JM is correct, there *is* an allegation that damage occurred following the appraisal.  Ms. Johnson alleges that she was provided the appraisal, and then made a *further* payment in the amount of $12,300.  Dkt. 34-1 at ¶¶ 6-9.  Thus, even accepting JM's interpretation of the policy, there is still a potentially covered claim alleged in the original petition.

There are factual allegations in the original petition filed in the state court that potentially support a covered claim against Elliot.  Therefore, JM had a duty to defend that arose when the original petition was filed.  Elliot's motion for summary judgment is GRANTED.

  **b.**  **Attorneys fees**

Elliot seeks its fees associated with litigating this case.  "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Pursuant to Tex. Civ. Prac. & Rem.Code § 38.001(7), Elliot "may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs" for a breach of contract.  TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(7) (Vernon 2002).  An award of reasonable attorney's fees is mandatory if there is proof of the reasonableness of the fees and the plaintiff has been awarded damages.

7

*Mathis v. Exxon Corp.*, 302 F.3d at 462 (citing TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 2002)).  Plaintiff bears the burden of proving reasonableness of the fees and of providing sufficient documentation to support an award.  *Pelt v. U.S. Bank Trust National Ass'n*, 259 F.Supp.2d 541 (N.D. Tex. 2003).  The determination of reasonableness and calculation of the proper fee award is left to the court's discretion, but is guided by "a rebuttable presumption of reasonableness for fees that are 'usual' or 'customary'" and the ability of the court to "take judicial notice of the 'usual and customary fees' and the contents of the case file." *Id* ., citing TEX. CIV. PRAC. & REM.CODE ANN. § 38.003-4 (Vernon 2002).

The court finds that Elliot's request for attorneys' fees and costs is reasonable in this case.  Elliot's attorneys' affidavit, when compared with the court's experience and the case file, show that the fees requested are "usual and customary," making it appropriate to engage the presumption of reasonableness.  JM has failed to present any basis for rebutting the presumption.  Hence, Elliot's request for fees in the amount of $17,000 is GRANTED.

## CONCLUSION

Upon consideration of the motion for summary judgment (Dkt. 26), the response, and the applicable law, the motion is hereby GRANTED.

It is further ORDERED that plaintiffs are entitled to an award of reasonable attorneys' fees and costs in the amount of $17,000.

FINAL JUDGMENT is entered in favor of plaintiffs and against defendant in that defendant has a duty to defend plaintiffs in the underlying state court proceeding, and plaintiffs are entitled to an award of $17,000 in attorneys' fees and costs.

It is so ORDERED.

Signed at Houston, Texas on February 22, 2011.

_____
Gray H. Miller
United States District Judge